## ILLIES AND OTHERS V. FITZGERALD.

A recital in a bond is evidence against the maker, in an action on the bond.

It seems, a bond to indemnify an officer against an illegal seizure already made, is valid.

If the face of the process, when put into the hands of the Sheriff, shows clearly that it is void, he is bound to notice such obvious and palpable defects ; and if he executes it, he does it at his peril, notwithstanding a bond of indemnity : but where a process, on its face, shows no conclusive or clear marks of invalidity, and eminates from a Court of record of extensive jurisdiction, and the Sheriff is not affected with knowledge of its invalidity, a bond to indemnify the Sheriff in the premises, will be valid, although the process prove to be void.

To render a contract of indemnity void, the party to do the unlawful act, must know the act to be unlawful, when he receives the agreement to indemnify him for the act ; and this, too, where the unlawfulness of the act results from the fact that the process, by virtue of which it purports to be done, is void for the want of jurisdiction over the subject matter, in the Court or officer that issued it ; except, perhaps, in cases where the usurpation of jurisdiction were so palpable as to exclude the supposition of ignorance on behalf of the party indemnified.

It seems that where it is contended that an indemnifying bond is invalid, because to do an unlawful act, it lies with the obligors in the bond to prove that the obligee knew that the act was unlawful, when he received the bond ; and this, too, notwithstanding the unlawfulness of the act proceeded from a want of jurisdiction of the Court or officer that issued the writ, over the subject matter.

Where the obligee in a bond of indemnity is sued and gives notice therof to the obligor or obligors, the judgment in that case is conclusive in a suit on the bond, both as to the recovery and the amount ; but where there is no notice of the pendency of the first action, it devolves on the plaintiff in an action on the bond, to show that the damages were fair in amount, and that they could not have been successfully resisted.

Where a bond is given to indemnify against an act done or to be done, and the indemnified is sued and gives notice thereof to the indemnifier, and judgment goes against the indemnified, it is not incumbent on the latter to appeal.

seems that the statute of limitations does not begin to run against a bond of indemnity, until there has been a recovery against the indemnified, and, perhaps, not until the money has has been paid.

Appeal from Harris.  The bond of indemnity, upon the validity of which this case turned, was given to the Sheriff Fitzgerald, to hold him harmless in the execution of a writ of seizure which was issued by the Chief Justice of the county, on the application of Illies, the mortgagee, against the mort-

52

gaged property in the hands of Knight, the mortgagor, under the second Section of the Act of 1838, (Hart. Dig. Art. 2504,) to provide for the foreclosing of mortgages on real and personal estates, which had been repealed by the Act of 1839, (Hart. Dig. Art. 265,) which deprived the County Courts of all jurisdiction not enumerated and defined in that Act. The bond was dated January 1st, 1846. This suit was brought to the Fall Term, 1850. Knight had sued Fitzgerald on the 31st of December, 1847, (of which Fitzgerald gave Illies notice, and the latter employed counsel to defend the suit) and at the Fall Term, 1849, had recovered judgment against him for $2,600, damages, for the trespass committed in seizing the goods. There was no appeal; and after execution issued and levied, on the 8th of November, 1850, the defendant paid on the execution the sum of $820. The indemnifying bond was in the sum of $820. It did not appear when the petition in this case was filed, except that it was entitled of the Fall Term, 1850; and the citation issued on the 9th of November, 1850. The bond recited that the property had been levied upon, and that a doubt had arisen in the mind of the Sheriff as to the legality or sufficiency of the execution, and as to the right of said Knight to the property, and was conditioned "to in-" demnify and save harmless the said John Fitzgerald, Sheriff "as aforesaid in the premises."

*Sherwood & Goddard*, for appellant. The demurrer in this case was improperly overruled. The indemnifying bond was void; it was void whether the process was good or bad. If the process was good, the officer could have executed it without hazard, and consequently there could have been no consideration to uphold the bond. If the Court acted without jurisdiction as to the subject matter, that, of course, appeared on the face of the process, and the latter being in such case void, the bond would be a mere indemnity against misfeasance. Where the question turns on the legality or illegality of the process, no indemnifying bond can be made

available. (See 6th page of the appellee's brief, and authorities their cited.)

There are certain maxims of law, to establish which, no authority need be cited, as for instance: Every person is bound to know the law. All general statutes are presupposed to be known to every body. No person is allowed to stultify himself. Ignorance of the law affords no excuse, nor can a mistake as to the law be made a ground for remedy. These are maxims which intelligent Courts have never departed from, even in degree, though they have many times seemed to bear hard on individual cases. No rules of jurisprudence, however, could be maintained without adhering to them strictly. Consequently ignorance of the law could not be made the consideration of an indemnifying bond.

The legality or illegality of the process must be determined by the matter appearing on its face, that is, so far as the ministerial officer is concerned. If the Court has general jurisdiction of the subject matter, and nothing appears upon the face of the process to the contrary, the ministerial officer who executes it, is justified; though the Court and party may be held as trespassers, if the process is void. (Savocool v. Bughton, 5 Wend R. 170.) This is a case in which a very elaborate opinion was delivered by Judge Marcy. The officer must know whether the process is a writ known to the law. The Sheriff, as well as every body else, is bound to know the law, and constructively does know it. There is no hardship in this rule; for, by custom, he is permitted to call, at any time, on the highest judicial tribunal, for advice. This he may do *ex parte* and without suit, when he is embarrassed as to his right to proceed, or as to the best course to be pursued. The Courts, in such cases, always act promptly in certifying their opinion, and in cases where a Sheriff has been prosecuted, the Court of original jurisdiction, and sometimes even the Supreme Court, will stay proceedings in some way, either by granting an order to stay, or allowing a continuance, until the opinion of the Supreme Court can be certified. There are other ways,

also, by which a Sheriff can always protect himself from harm, where the question arises, either on the legality of the process, or on the right of property levied on. (See the reasoning of the Court in Bagley v. Bates, 8 John's R. 187.)

The instructions of the District Judge to the effect, that the defendant, Illies, was liable on the bond, whether the process was legal or not, and making the judgment of Knight v. Fitzgerald conclusive evidence of Fitzgerald's right to recover against Illies, were erroneous. These instructions were not only wrong as it respects the matters of law, but they affected the question of fact before the jury, as to the collusion between Knight and Fitzgerald, which the jury were to pass upon.

The position taken by appellee, that a bond of indemnity, for a past trespass, is good, for the reason that no injury could result in such case, is not applicable to the case at bar. This was an attempted indemnity, to go on and sell the property, after he had been warned, by Mr. Gray, (as stated in Mr. Gray's testimony,) of the illegality of the writ. Nothing can be clearer than that it was to procure the sale of the property, that the attempted indemnity was executed. Consequently, the indemnity was for proceeding with an act not then consummated.

*P. W. Gray*, for appellee. The fact of notice being brought home to the appellants cuts off and precludes all pretence for the charge of negligence or fraud in the management of the defence. (Duffield v. Scott, 3 Term R. 374; 1 Smith Lead. Cases p. 171, Am. Ed.) After the notice given to the indemnifier, the appellee might have rested on his oars, and waited the issue without further defence: at all events, his having made the *bona fide* defence, which was made, was all that could have been required of him. It surely did not lessen the ground of action, which he otherwise had. Some cases go even further. (Andrus v. Bealls, 9 Cow. R. 693; 2 U. S. Dig. Title INDEMNITY, Sec. 5, p. 517; Stone v. Hooker, 9

Cow. R. 154; Trustees of Newburgh v. Galatian, 4 Cow. R. 340; Blasdale v. Babcock, 1 Johns. R. 517; Kip v. Brigham, 6 Johns. R. 158; Kip v. Brigham, 7. Johns. R. 168.)

II. Upon the first and main question in this cause, presented by the record, it is admitted that the law is clear, " that " wherever the contract is to do an act which is illegal, it " is void." (Craig v. State of Missouri, 4 Peters, 410; Collins v. Blantem, 2 Wilson, 341; 1 Smith's Lead. Cases, 353, Am. Ed.; Hunt v, Robinson, 1 Tex. R. 748;) or, to bring the point nearer to the case at bar, " all contracts to indemnify " an officer against prospective non-feasance, malfeasance, or " misfeasance of their official duties, are void;" or, " to in- " demnify him for doing an act manifestly in violation of his " duty, or for omitting to do an act which is plainly his duty, " will be void." (Story on Cont. Sec. 572–574.)

These authorities are as strong for the appellants, as the facts in the record will justify, and more so. For the appellee, it is submitted that the pleadings and evidence show clearly, that the bond of indemnity was not given as an inducement, or in consideration that the appellee would do an illegal act; or that the act was prospective; or that it was manifestly or plainly in violation of his duty. The bond, on its face, recites that the levy had been made, and refers to the inventory of goods already taken under the writ: it then recites that a doubt had arisen " in the mind of the Sheriff," (which last words " in the mind of the Sheriff" were inserted by the counsel for appellants, who, it appears, examined it before its execution,) as to the legality of the writ; and also as to the ownership of the goods; whereupon a bond of indemnity was required. From all the facts, and from the finding of the jury, by their verdict, it is believed that the bond in this case is valid, as 1st. an agreement under seal to indemnify an officer for an illegal act already done; 2nd. to indemnify, for an act apparently legal, or at the worst, of a doubtful nature.

If either of these positions is sustained by the evidence, as we think they clearly are, then the rulings of the Court be-

low, on the demurrer, and also in the charges given and refused to the jury, are correct and well supported by the law. On both points, the authorities are numerous and plain. I shall only cite a few:

1st. "An agreement under seal, to indemnify an officer for " an illegal act, already done, is valid; for the same reason " as that which obtains in bonds given in consideration of past " cohabitation and the like, to wit: that the seal imports a con-" sideration, and that, the act being done, no injury can re-" sult to the public from a contract to indemnify the party, it " being no consideration for the act itself." (Story on Cont. 541 and 575, and cases in notes; 1 Smith Lead. Cases, 363, Am. Ed., in notes to Collins v. Blantem; Binnington v. Wallis, 4 B. & Ald., 659; Doty v. Wilson, 14 Johns. R. 381; Given v. Driggs, 1 Caines, 460.)

"A contract entered into to indemnify a Sheriff for past " neglect, is not void for illegality." (Hall v. Huntoon, 17 Vermt. R. 244; 4 U. S. Dig. [1 Suppt.] p. 68, Art. 235, 239; Hunter v. Agee, 5 Humph. R. 57; Prewett v. Garrett, 6 Ala. R. 128.)

In Kneeland v. Rogers, 2 Hall, R. 587, 588, Judge Oakley says : " It is well settled that any contract made for the pur-" pose of indemnifying a man against an illegal or immoral " act, to be done at a future period, is void on principles of " public policy. But it is also settled, that a party may in-" demnify himself against the consequences of any unlawful " act already done." He cites Haskett v. Tilley, 11 Modern R. 93, and Comyn on Cont. 30.

2nd. But the contract would be valid, if given before the commission of the illegal act, unless the obligee knew that it was illegal. "If the act which forms the consideration of a " promise, be supposed at the time to be legal, though it after-" wards turns out not to be so, a promise to indemnify there-" for would be good and binding." (Story on Cont. Sec. 573 and notes.) " A promise to indemnify against an act which " turns out to be a trespass, is good, unless the promissee knew

" the act contemplated to be a trespass." (Allaire v. Ouland, 2 Johns. Cas. 52; Stone v. Hooker, 9 Cow. R. 154; Avery v. Halsey, 14 Pick. R. 174.) The case of Coventry v. Barton (17 Johns. R. 143) is a strong one in point, showing that doubt is not knowledge, sufficient to render the contract invalid. (See also Hunter v. Agee, 5 Humph. R. 57; Prewet v. Garret, 6 Ala. R. 128, cited in 4. U. S. Dig. [1 Suppt.] p. 68, Art. 238.) "A promise to indemnify an officer for the " execution of an act apparently legal, is good." (Story on Cont., Sec. 574 and notes; Davis v. Arledge, 3 Hill, S. C. 170; 4 U. S. Digest [1 Suppt.] p. 68 Art. 232.)

LIPSCOMB, J. The main question, and perhaps the only one, presented for our consideration, is the validity of the bond of indemnity given by the defendant. The defendant, Illies, had obtained a writ of execution from the Probate Court, directed to the Sheriff of the county of Harris, to seize the personal effects of one Knight, to satisfy the amount due from Knight, on the foreclosure of a mortgage lien upon the property to be seized. This execution was placed in the hands of Fitzgerald, at that time Sheriff of the county of Harris, to be executed. The latter not being satisfied in his own mind, that the execution was legal, nor that the property levied on was the property of Knight, on advice, required and obtained the bond of Illies, with Nichols and Ruthven as securities, to indemnify him against damages that might be recovered against him by Knight, on account of this transaction. Suit was instituted by Knight, for an alleged trespass by Fitzgerald in making the seizure of his goods, and prosecuted to a verdict and judgment for $2,600; and it is in proof in this case, that eight hundred and fifty dollars of the judgment had been paid, by the agent of Fitzgerald, after a levy of execution. That Illies had notice of the pendency of the suit, and had counsel attending to it for him, there is not the slightest ground to doubt. The consequences of such notice may perhaps be considered in another place; it is dismissed for the present.—

There was a verdict and judgment for the plaintiff, from which Illies appealed.

The appellant has challenged the validity of the bond: First, That it is void, because that the consideration upon which it was founded, was to do an illegal act, because if the execution was a nullity, to execute it would be a trespass; and Secondly, If the execution was valid, he was bound to execute it, and a bond to indemnify him for doing what the law required him to do, is void. As general propositions these may be true; but if they are to be taken without any qualifying restrictions, Sheriffs would be placed in a perilous position, worse than stearing between Scylla and Charybdis, because, by refusing to enter the strait, they would be drawn within the vortex of another whirlpool, the action of the plaintiff in the execution, for not entering the pass. The plaintiff would have his action against the Sheriff for failing to execute the process; and it is obvious that he might be ruined by such litigation, if, under such circumstances, no indemnity bond would be valid, whether the execution was valid or not. One exception, or qualification, is admitted by the counsel; that is, if the illegal act has been committed, and not to be done, at the time the bond of indemnity is given, that it is valid against the party proving the unlawful act to be done. This has been often decided to be the law. (Story on Contracts, 541, 575 and note.) The appellant insists, however, that the bond in this case was not given for the past illegal act, but for an act subsequently to be done. In this we believe he is clearly mistaken; the bond, on its face, affords satisfactory evidence that it was taken and executed subsequent to the supposed trespass, arising from the seizure of the property under the process. It contains, among other recitals, the following: "And whereas by virtue of the writ of execution or order of "sale aforesaid, certain drugs, medicine, furniture and fix- "tures, have been levied upon." It is true, that the recitals in a deed are not always evidence, and it is peculiarly so, when another deed is recited; such recital is not evidence of the

deed so recited, nor of notice to a purchaser or creditor, of the existence of such deed; but recitals, in general, are not to be disregarded, as wholly useless and furnishing evidence of no fact whatever. The office of a recital is more frequently employed to explain the true consideration on which the deed is made; and in this way it could be made evidence against the maker of the deed. And on this occasion, it has well performed its office, in showing that it was executed after the levy was made. The fact that it was so executed, has not been controverted by any direct proof; and it is strongly corroborated by other evidence.

So far as the validity of the bond is concerned, we might stop here; but other questions have arisen, upon the record, that renders it proper that we should further discuss the rule of law, that a contract of indemnity, to do an unlawful act, is illegal and void. We have before admitted the proposition to be law, and referred to the extreme hardship that might arise from its enforcement, without any qualification. It would seem to be so very hard, and unreasonable, to hold a Sheriff who is disposed to act fairly, and honestly to discharge his duty, responsible for a mistake, and not permit him to secure himself against liability for an act honestly done, by a contract of indemnity, with the person at whose instance he has incurred such liability, that it would be assented to with hesitation and great reluctance. In this case an execution, issued from the Probate Court, having on its face, all that the law required as to form, was put into the hands of the Sheriff, for execution. Eminent counsel assure him that there is no doubt of its validity, and others, enjoying equal distinction, advising him that the Probate Court had no authority to issue the process, and warning him that he had better ask an indemnity. Under such circumstances, that he should have (in the language of the recital in the deed) "in his own mind doubts," (and these last words put in by the counsel for the plaintiff in the execution, by way, it would seem, of protestation against any one else having such doubts,) is not at all remark-

able. The question of the validity of the execution was involved in doubt; it depended upon the jurisdiction of the Probate Court; and learned lawyers entertained and expressed different opinions, some contending that the jurisdiction had not been taken from the Court, and others that the law conferring the jurisdiction had been, by another Act of the Legislature, either expressly or by implication repealed ; and it was therefore exceedingly doubtful, whether the jurisdiction remained in the Probate Court or was vested exclusively in the District Court. With such grounds of reasonable doubt in the mind of the Sheriff, would it be reasonable, would it be reconcilable with the common sense of justice between man and man, to say that an indemnity, taken by him, from the person who required him, in the midst of so much uncertainty, to act, as a security against any liability, he might incur, by so acting, is unlawful ? Such a conclusion would not only do great violence to our own judgment, but would be so outrageously unjust as to shock the moral sense of mankind in general.

The rule of law, we have been examining is not, however, to be regarded so inexorable as to admit of no modification ; but that it is only a general rule, and like all general rules, implies that there may be exceptions or modifications to it ; and that on sound principles of law, more equitable rules, better defining the liabilities of Sheriffs, without repudiating any known rule of law, can be laid down. The whole doctrine on the subject of illegal contracts, is based upon the hypothesis that the illegality and consequently the wrong, is known to be wrong, at the time the party takes the indemnity for doing the act. If the indemnity is to the doing an act, known before it is done, to be contrary to law, the contract so tainted would be void; and the doer of the act is left to meet all the consequences of such wrongful act, as an appropriate punishment for the wilfull commission of the wrong. If the face of the process, when put into the hands of the Sheriff, shows clearly that it is void, he is bound to notice such obvious and palpable defects ; and if he executes it, it is at his own peril

he does so.  If the process had been issued from a person or persons assuming to be a Court of record, when no such Court was known to the land, he would be bound to know that there was no such Court, and that process purporting to have been issued by it, was void.  No indemnity, in such case, would be valid, should he suffer damages by obeying such process.  And if he, with a knowledge that the _mandate_ to him to do the act, was unlawful, should, notwithstanding such knowledge, take an indemnity bond, and then execute it, the contract for indemnity would be a void contract, and leave him without any security for whatever damages he may have, to respond to for such act.  But we apprehend that the position of the Sheriff would be entirely different, where a process on its face shows no conclusive or clear marks of invalidity, emanating from a Court of record, of extensive jurisdiction. If, in such case, the Sheriff, not affected with the knowledge of its want of validity, contracts with the plaintiff in the execution, for an indemnity, we know no ground of public policy that would render the contract void.  It is the policy of the law, to exact from the Sheriff an honest and a faithful discharge of his duty, but to give no aid to those who would wish to entrap him, and make him perform an act unlawful in itself, but its illegality unknown to the Sheriff at the time.  The plaintiff, in the execution, will not be permitted to hold out the indemnity bond, as a lure to mislead the Sheriff, and say to himself, I will give the bond and thereby induce the Sheriff to execute the process, and if he should be compelled to pay damages, I am in no danger, because it will be easy to show that the process was either good or bad, and either would invalidate my bond.

The rule of law, that a contract to indemnify for doing an illegal act, is void, must be subject to the qualification that the act is known to be illegal at the time of entering into the contract.

The principles we have discussed, and our conclusions, are believed to be supported by legitimate deductions from ad-

judged cases. The late Chief Justice Spencer, in the case of Coventry v. Barton, says, " I have no hesitation in saying, " that it is a true and just distinction between promises of in- " demnity which are, and those which are not void : that if the " act, directed or agreed to be done, is known, at the time, to " be a trespass, an express promise to indemnify would be ille- " gal and void ; but if it was not known, at the time, to be a " trespass, the promise to indemnify is a good and valid " promise ; " (17 Johns. R. 144 ;) and he cites Cowper, 343. The Judge, in further commenting upon the case, lays stress upon the fact of its being somewhat uncertain, whether the order that was given to do the act, was legal or not, and con- cludes by saying : " I think the conclusion inevitable, that " the plaintiff did not know, at the time, the act he was doing, " was a trespass ; and then the promise of indemnity is valid." In the case of Stone v. Hooker, Woodworth, Judge, acknowl- edges the distinction between such contracts of indemnity as are void, and those that are valid ; and, in support of the principle, that to invalidate the promise of indemnity, the party doing the act must know, at the time of his contract, that the act to be done was a trespass, he cites the case of Coventry v. Barton, 17 Johns. R., as conclusive, (9 Cow. R. 154,) and adopts the very language of the Chief Justice Spencer in that case, as before cited. These two cases we consider as conclusive, and result in this, that to render a contract for in- demnity void, the party to do the unlawful act, must know the act to be unlawful when he receives the agreement to in- demnify him for the act.

In the Court below, the Judge charged the jury " that it " made no difference whether the bond sued on was given to " plaintiff, before or after the levy of the process ; in either " event it was obligatory." This charge presents no erron- eous proposition in law, when applied to the case before the Court. It certainly made no difference, if the Sheriff did not know that the process was void, when he took the bond ; whether it was taken before or after the levy, it was valid.

There was no effort to prove, that the Sheriff knew that the process was illegal; it was treated, in the defence, as altogether immaterial; and, in the absence of that knowledge, the bond was valid, whether executed before or after the levy. It was a law question as presented; for the Court and not the jury; and the Court did not err in its ruling.

The Court further charged the jury, "that whether the pro-" cess, under which the plaintiff acted, and which was made " the basis of the recovery by J. D. Knight against plaintiff, " was valid or not, so far as the purposes of this suit are con-" cerned, if there has been a recovery of damages against " plaintiff in consequence of executing said process, the plain· " tiff has good right to sue upon the bond of indemnity." The doctrine is believed to be settled, that where there has been a suit against the person for doing the act, and a judgment for damages recovered against him, when suit is afterwards brought on the contract of indemnity, for the reimbursement of the damages, the legality of the act which was the basis of the action for damages, cannot be again inquired into, especially where the indemnifier had notice of the suit for damages, which, if recovered, he was bound to make good.

In Duffield v. Scott, 3 Term R. 374, Mr. Justice Buller says, " If a demand be made, which the party indemnifying is bound " to pay, and notice be given to him, and he refuse to defend " the action, in consequence of which the person indemnified " is obliged to pay the demand, that is equivalent to a judg-" ment, and estops the other party from saying that the de-" fendant in the first action was not bound to pay the money."

It is believed, however, if there had been no notice of the pendency of the first action, it would have devolved upon the plaintiff to show that the damages were fair in amount, and could not have been successfully resisted. (See Stone v. Hooker, 9 Cow. R. 154; Andrus v. Bealls, Id. 693.)

We have before said, that there could be no doubt that the defendant, Illies, had notice of the suit of Knight v. Fitzgerald: the notice is positively proven; and there is record evi-

dence, that his counsel did defend the suit; and he is therefore estopped, in the language of Mr. Justice Buller, from saying that Fitzgerald was not bound to pay the money.

There is nothing in the objection that Fitzgerald did not take the case up to the Supreme Court for revision; it is enough if he did not prevent Illies from taking it up; and it is shown that no impediment was offered by the defendant in that action: and further, according to our practice, Illies could have come into the action as a party defendant, and controlled the case himself, he being the party most interested under his bond of indemnity. The judgment is affirmed.

Judgment affirmed.