DAVIDSON v. McKINLEY et al.

(Court of Civil Appeals of Texas. Amarillo. Dec. 21, 1912. Rehearing Denied Jan. 18, 1913.)

1. VENDOR AND PURCHASER (§ 261*)—TRANSFER OF LIEN NOTE—EFFECT ON LIEN.

A transfer of a vendor's lien note by the payee's indorsement conveys with it the lien for the transfer secured; a written transfer not being necessary.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 674–686, 688–695; Dec. Dig. § 261.*]

2. VENDOR AND PURCHASER (§ 265*)—TRANSFER OF NOTE—EFFECT ON LIEN—NECESSITY OF RECORDING.

It is not necessary that the note be recorded in order to convey the security of the lien with the transfer of a vendor's lien note by the payee's indorsement thereon if subsequent purchasers had notice of the lien; an unrecorded vendor's lien occupying the same position as an unrecorded deed.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 492, 700–712; Dec. Dig. § 265.*]

3. VENDOR AND PURCHASER (§ 265*)—BONA FIDE PURCHASER.

One who when he purchased land knew that a vendor's lien was outstanding was not a purchaser without notice.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 492, 700–712; Dec. Dig. § 265.*]

4. VENDOR AND PURCHASER (§ 267*)—VENDOR'S LIEN—RELEASE—PERSONS AFFECTED.

The release by the original vendor of the vendor's lien would not affect one who had previously purchased and held a vendor's lien note with the knowledge of the parties to the release.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 751–758; Dec. Dig. § 267.*]

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

**5. INDEMNITY (§ 12*)—DISCHARGE OF INDEMNITOR.**

Defendant purchased land from H., executing a vendor's lien note, and afterwards sold the property to plaintiff, who did not assume payment of the notes, but received a note for a like amount due at the same time, executed by defendant and another who then agreed to pay the lien note when due, and obtain a release. Defendant did not pay the lien note when due, which had meanwhile been sold by the vendor to a bank without plaintiff's knowledge, but procured a release from the original vendor without consideration before the note was paid. Plaintiff, supposing the lien note was paid, delivered the indemnity note to defendant. *Held* that since defendant obtained the indemnity note by fraud from plaintiff, he and the other indemnitor cannot defeat an action on such note and indemnity contract on the ground that they were discharged from liability thereon because the bank did not procure a written transfer of the lien and have it recorded, or by the fraudulent execution of the release to defendant by the original vendor.

[Ed. Note.—For other cases, see Indemnity, Cent. Dig. § 27; Dec. Dig. § 12.*]

**6. INDEMNITY (§ 10*)—ACTIONS—DEFENSE OF SURETY—DUTY.**

One who sold land subject to a vendor's lien, and executed to the purchaser an indemnity contract to pay the lien notes, when notified of a suit by a transferee of the note to enforce the lien brought against himself, his grantee and the original vendor, was bound to defend the suit, and he and his surety are liable on the indemnity contract if he did not do so.

[Ed. Note.—For other cases, see Indemnity, Cent. Dig. § 20; Dec. Dig. § 10.*]

**7. PRINCIPAL AND SURETY (§ 90*) — DISCHARGE OF SURETY.**

A surety on a contract to indemnify a subsequent purchaser for the nonpayment of vendor's lien notes could not claim that his liability as indemnitor was discharged by his principal's fraud in procuring the release of the vendor's lien notes, or by failure of an indorsee thereof to obtain a written transfer of the note; he not having been induced to sign the note by the second vendee's acceptance of the release or the bank's failure to record such transfer.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. § 140; Dec. Dig. § 90.*]

**8. INDEMNITY (§ 9*)—ACTIONS AGAINST SURETY — AMOUNT OF RECOVERY — ATTORNEY'S FEES.**

Defendant sold plaintiff land subject to a vendor's lien note and at the same time executed to plaintiff, with another, a note of like date and amount, bearing 10 per cent. interest, and providing for 10 per cent. additional as attorney's fees if collected by suit, which was to be surrendered upon defendant's payment of the original note, and at the same time agreed to indemnify plaintiff upon nonpayment of the outstanding lien note. *Held*, construing the note executed by defendant and his surety as a part of the indemnity contract, that, in the absence of a showing that the attorney's fees were unreasonable, plaintiff in a suit on an indemnity contract and note could recover the attorney's fees stipulated for in the latter.

[Ed. Note.—For other cases, see Indemnity, Cent. Dig. §§ 16, 17; Dec. Dig. § 9.*]

**9. INDEMNITY (§ 6*)—CONTRACT.**

An indemnity contract executed to procure the payment of notes should be given effect according to the intent of the parties the same as any other contract.

[Ed. Note.—For other cases, see Indemnity, Cent. Dig. §§ 7, 9, 18, 19; Dec. Dig. § 6.*]

*On Motion for Rehearing.*

**10. INDEMNITY (§ 15*) — DISCHARGE OF SURETY.**

Plaintiff purchased land subject to a vendor's lien note from defendant who at the same time executed, with a surety, a similar note and an indemnity contract for payment, which was to be surrendered upon payment of the original lien note. The lien note was transferred without plaintiff's knowledge, and was not paid when due, but defendant fraudulently and without consideration procured a release from the original vendor which plaintiff received. The transferee of the lien note afterwards enforced the lien and had the release canceled as to it in a suit unsuccessfully defended by plaintiff on the ground of the transferee's negligence in not having the lien transferred and recorded. *Held*, that plaintiff by refusing to surrender the release received by him, pursuant to the advice of attorneys, after the termination of such suit, did not preclude himself from suing defendant and the other surety upon the indemnity contract.

[Ed. Note.—For other cases, see Indemnity, Cent. Dig. §§ 36–40, 42–47; Dec. Dig. § 15.*]

**11. PRINCIPAL AND SURETY (§ 126*)—DISCHARGE.**

In view of Sayles' Ann. Civ. St. 1897, art. 3811, providing that a surety upon a contract for payment of money may require the creditor by written notice when the right of action has accrued to institute suit upon the contract, a mere postponement or failure to sue does not discharge a surety, in the absence of agreement to do so.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 329–351; Dec. Dig. § 126.*]

Appeal from District Court, Deaf Smith County; D. B. Hill, Judge.

Action by G. L. Davidson against H. B. McKinley and another. From a judgment for defendants, plaintiff appeals. Reversed and rendered.

See, also, 146 S. W. 576.

Barcus & North, of Weatherford, for appellant. W. H. Russell and Carl Gilliland, both of Hereford, for appellees.

HUFF, C. J. This action was brought by G. L. Davidson against H. B. McKinley and J. D. Thompson, in the district court of Deaf Smith county, on an indemnity contract and note for $750, bearing interest at the rate of 10 per cent. from maturity, with 10 per cent. attorney's fees if sued on or placed in the hands of an attorney for collection. The note was part of the indemnity contract, and declared on as part thereof. At this time it is not deemed necessary to set out the pleadings more at length, as the facts in the case are practically undisputed, and will sufficiently show the nature of the action.

On August 26, 1907, appellee H. B. McKinley purchased from D. W. Hawkins 80 acres of land out of section No. 80, in block K-3, Deaf Smith county, Tex., and as a part of the consideration executed two certain

vendor's lien notes for the sum of $750 each, payable to the order of D. W. Hawkins and signed by H. B. McKinley, and retained a vendor's lien in said deed of conveyance to secure the payments of said notes. On April 3, 1908, H. B. McKinley sold the said property to appellant, G. L. Davidson, and gave Davidson a warranty deed to same. Appellant knew at that time that the two notes were against the land, but did not assume the payment of the same or agree to pay them, it being the agreement between him and McKinley that McKinley would pay the notes when they became due. To protect himself against loss or damage on account of said notes being against the land in case he should have to pay them or either of them, appellant demanded and received from appellee McKinley two notes for the same amounts as the said vendor's lien notes and due at the same time, executed by appellees McKinley and J. D. Thompson; appellee McKinley agreeing at that time to pay off said vendor's lien notes when they became due and to get a release for same, and, when that was done, appellant was to surrender the indemnity notes given to him by appellees. When the first of said vendor's lien notes fell due in August, 1908, appellee McKinley paid same, and appellant then turned over to him the first of said indemnity notes; but, when the second of said vendor's lien notes became due, appellee McKinley did not pay same, and the holder and owner of said notes, D. W. Hawkins, sold the said note to the First State Bank & Trust Company of Hereford for value, indorsing the note at that time, but did not execute a written transfer of the lien and note. McKinley thereafter continued to pay the interest on said note until the summer of 1910, and about the month of August, 1910, appellant asked appellee McKinley if he had ever paid off said note and gotten same released, and was informed that he had not done so, but that he would do so in a few days, and a short time thereafter, about October, 1910, appellee McKinley told the appellant that he had gotten a release of said last vendor's lien note, and had the same recorded, and that he, appellant, could get the said release from the clerk's office, and appellant then called at the clerk's office and got the release, and found the same was the regular release of the vendor's lien and properly executed by D. W. Hawkins. Appellant did not know at this time that Hawkins had sold the note to the First State Bank & Trust Company of Hereford, and supposed the release was all right, and made no investigation, simply taking McKinley's word in the matter. In a few days thereafter appellant delivered the second and last of the indemnity notes to McKinley; this being done in November, 1910, and about that time the bank, the owner of the note, learned what had happened, and took the matter up with

all parties, in an effort to get same straightened out, and get the release canceled, but this appellant refused to do, and upon the advice of attorney that the release was all right and would hold, and not to cancel same, he refused to cancel. The bank then brought suit against appellee H. B. McKinley and appellants G. L. Davidson and D. W. Hawkins on said vendor's lien note, and asked for a judgment, fixing its lien and a foreclosure of same on the land purchased by appellant from McKinley. Appellant and D. W. Hawkins answered and defended said suit. The case was tried in the district court of Deaf Smith county, Tex., and resulted in a verdict and judgment against H. B. McKinley for $886.10, with 8 per cent. interest from May 16, 1911, and a foreclosure of the lien on the land and a cancellation of the release, and ordered the land sold to satisfy the judgment, and, in order to protect his land from forced sale, appellant was forced to pay and did pay said judgment on July, 1, 1911, together with all costs thereon, the costs amounting to $19.85. After the judgment had been obtained against appellant, he got possession of the last of said indemnity notes from the attorneys for appellee H. B. McKinley, and turned the same over to Barcus & North for collection, who brought suit thereon as above stated. This suit was filed on the last of the two indemnity notes and the former judgment fixing the lien on the land and the payment of same by appellant, which was fully set out in appellant's petition. The last of the two vendor's lien notes was admitted never paid by McKinley nor any one for him, and nothing of value was ever paid Hawkins for the release, and at the time McKinley got the release from Hawkins he knew that the vendor's lien note had not been paid. At the time McKinley secured said release from D. W. Hawkins the deed records of Deaf Smith county, Tex., showed that D. W. Hawkins was the owner and holder of said vendor's lien notes, and that D. W. Hawkins had never executed a written transfer of said vendor's lien to the First State Bank & Trust Company of Hereford, nor to any other person; appellant, Davidson, testifying that he did not know anything about anybody having any interest in said note except D. W. Hawkins at the time he got the release, and he thought Hawkins had a right to release the lien. This release was properly executed, acknowledged, and placed of record, and was dated and filed for record October 18, 1910. Appellant never learned, nor was he informed, that any person or the bank had any interest in said notes or the last one until about December 1, 1910, at which time he learned the bank was the owner of said note by indorsement. This case was tried before the district judge without the intervention of a jury, and resulted in a judgment in favor of the appellees, and that appellant take nothing by his suit.

Appellees object to our considering the brief of appellant because the assignments in the brief do not comply with rule 25 (142 S. W. xii) by referring to the errors complained of in the motion for new trial. The brief is defective in this particular, as are a great number of the briefs filed in this court. This court has had occasion several times to call attention to this rule. Attorneys will save themselves much trouble and the court much consumption of time by observing the rules in the preparation of their briefs. We cannot indulge this practice where attorneys have had reasonable time to become acquainted with the amendments. If, however, we disregard the brief of appellant, and look to that of appellees, and to the record, we are forced to the conclusion that there is such fundamental error in the judgment of the court as requires at our hands a reversal of the judgment of the trial court. We shall, therefore, look to the otherwise admirable and able brief of appellant to assist us in our consideration of the case. It is proper to state at this time that the learned judge, before whom the case was tried, has followed the opinion and direction of this court handed down on a former appeal of this case, reported in 146 S. W. 576. We have concluded that this court was in error in that portion of the opinion which held substantially that the indemnitors were released from liability on their contract of indemnity because the bank did not get a written transfer of the lien and have it recorded, and by the execution of the release of the lien by Hawkins, the original vendor of the land and payee in the notes, executed by McKinley to him.

[1] It is so well established that the transfer of a vendor's lien note by the indorsement of the payee therein conveys with it the lien on the land for its security that it would be a useless consumption of time to cite authorities. Moran v. Wheeler, 87 Tex. 179, 27 S. W. 54, so holds No written transfer is necessary.

[2] Neither is it necessary that it be placed of record. In this case, when D. W. Hawkins transferred the vendor's lien note for $750 to the First State Bank & Trust Company of Hereford, the lien on the land was transferred to the bank, which it had the right to foreclose. The case of Moran v. Wheeler, 87 Tex. 179, 27 S. W. 54, upon which was based the opinion of this court on the former appeal, holds: "Considered as a note, it was not within the statute authorizing the record of instruments, but as a mortgage it was entitled to registration, and must be recorded in order to effect the subsequent innocent purchaser without notice for a valuable consideration, if not mentioned in the deed." In that case the vendor's lien was treated by the court as a mortgage, and it is there said: "In this state assignments of mortgages must be recorded in order to effect subsequent purchasers without notice for a valuable consideration." Such has been the holding of the Supreme Court since the above case. Southern Building & Loan Association v. Brackett, 91 Tex. 44, 40 S. W. 719; Lewis v. Ross, 95 Tex. 358, 67 S. W. 405; Rogers v. Houston, 94 Tex. 403, 60 S. W. 869, and in a great number of cases by the Courts of Civil Appeals. A vendor's lien unrecorded is in no worse condition than an unrecorded deed. The deed is not void because not recorded. It is only subsequent purchasers without notice for value that can defeat the title under the deed. If such subsequent purchaser has notice of the deed or the vendor's lien, or has not paid value, such purchaser cannot defeat the title or the lien, even though unrecorded. Hawkins, when he executed the release of the vendor's lien, knew he was not the owner and holder of the note, and that the lien was transferred with the note. The release so executed by him was a fraud on the bank, whose money he had received for the notes and the lien. McKinley, when he procured the release and placed it on the record, and notified Davidson he had done so and thereby obtained possession of the indemnity note, he knew he had not paid off the vendor's lien note, and that the lien in fact was not thereby extinguished. He had been paying interest on the note to the bank, and he knew it was the owner and holder of the vendor's lien note, and that Hawkins had no right to release such lien. He not only participated in the fraud which Hawkins perpetrated on the bank, but also perpetrated a fraud on appellant, and thereby procured the surrender of the indemnity note.

[3] At the time appellant purchased the land from McKinley, he knew the vendor's lien was outstanding against the land, and therefore was not a purchaser without notice. He took the indemnity note from McKinley to secure himself from loss by reason of such lien. There was no consideration for the release of the vendor's lien when Hawkins made it. McKinley gave nothing for it when he obtained it or placed it of record, and, when McKinley procured Davidson to deliver to him the indemnity note, he was out nothing but his fraud. By false representations he got that to which he was not entitled.

[4] Hawkins' release of the maker, McKinley, on the vendor's lien, is of no effect as to the bank, who was known to have an interest in the note, for it was then known by these parties that the bank was the owner and holder of the note. Mays v. Sanders, 90 Tex. 132, 37 S. W. 597. Davidson was the only one who at that time did not know that the bank was the owner, but it was a matter of no concern of his who owned the note. He was indemnified by McKinley against the indebtedness on the land he had purchased from McKinley. It was therefore

the imperative obligation on the part of McKinley to discharge that lien.

[5] The indemnitors in good conscience cannot say: "We got the indemnity note by fraud from Davidson, and he therefore gave up something of value, and although he in fact got nothing and his land was not discharged from the lien, but because the bank neglected to place a written transfer of the lien on record, therefore the indemnity note was discharged, and McKinley, the one guilty of the act, and his surety, were discharged." We do not believe there is any rule of equity that can be invoked which will work such discharge.

[6] When McKinley had notice, as he did, of the suit against Hawkins, Davidson, and himself, which the bank brought to enforce the lien against the land, the law imposed upon him the duty under his indemnity contract to defend the suit against that lien, and, if he did not do so, then he and his surety were liable on the indemnity note whether he or Davidson had possession of the note. Illies v. Fitzgerald, 11 Tex. 429, 430; United States Fidelity Co. v. Fossati, 97 Tex. 497, 80 S. W. 74; Martin Brown Shoe Co. v. Auld, 34 S. W. 1050; 35 Cyc. 1774; Meyer v. Purcell, 214 Ill. 62, 73 N. E. 392; Martin v. Buffalo, 128 N. C. 305, 38 S. E. 902, 83 Am. St. Rep. 679; Flack v. Thaxter (Com. Pl.) 17 N. Y. Supp. 359. In the case of the United States Fidelity Co. v. Fossati, supra, Judge Williams said: "It has long been the law that warrantors of the title to either real or personal property may, when their warranties are sued for such property, either make themselves, or be made, parties, in order to defend the title which they have warranted. But this is because of the peculiar issue to be tried. They have bound themselves to make good the very title which is in question and a judgment against that title where they have proper notice of the suit, binds them, whether they are made parties or not [citing authorities]. The same ruling has been made as to sureties on indemnity bonds given to sheriffs and other officers in order to induce them to make levies. In these cases the plaintiff in an action against an officer for such a levy has also the same cause of action against the indemnitors (Cabell v. Hamilton-Brown Shoe Co., 81 Tex. 104, 16 S. W. 811; Stevens v. Wolf, 77 Tex. 215, 14 S. W. 29); and in decisions made in these cases before the statute authorized this practice have to support them, this reason besides those that exist in cases of warrantors. The indemnitors, if they have notice of the suit, are bound to defend the action or be bound by the judgment, whether parties or not." In the case of Cabell v. Hamilton-Brown Shoe Co., supra, in discussing the question whether the statutes of this state as to indemnity bonds for sheriff apply to United States marshals, the court said: "If the statutes be not applicable to marshals, it indicates a rule

as to the joinder of indemnitors which was recognized before the statute was passed." Stiles v. Hill, 62 Tex. 431; Williams v. Warren, 82 Tex. 319, 18 S. W. 560. In the case of Illies v. Fitzgerald, 11 Tex. 417, it is held, where the obligee in a bond of indemnity is sued and gives notice thereon to the obligors, the judgment in that case is conclusive in a suit on the bond, both as to recovery and the amount; but, where there is no notice of the pendency of the first action, it devolves on the plaintiff in an action on the bond to show that the damages were fair in amount, and that they could not have been successfully resisted. See, also, as to the effect of the judgment, McCoslin v. David, 22 Tex. Civ. App. 53, 54 S. W. 404.

As to McKinley, there can be no question as to notice. As to the amount of the judgment for the vendor's lien note, interest, and costs of suit, it appears there can be, and in fact there is, no question as to its fairness. Pope v. Hays, 19 Tex. 375. We do not think the judgment rendered, foreclosing the lien could be successfully resisted. The court in that case correctly found the lien had not been released. Davidson, appellant herein, was not a subsequent innocent purchaser of the land without knowledge of the lien. Had all parties been before that court on proper pleadings, it would have been that court's duty to have rendered judgment foreclosing the lien and in favor of Davidson, against McKinley and Thompson, the appellants herein, on the indemnity note. By such judgment the court would have prevented McKinley from benefiting by his fraud.

[7] Thompson could not be a beneficiary of such fraud, as he shows no injury or loss to himself by reason thereof. He was not induced thereby to sign the indemnity note as surety by Davidson's acts, or by the failure of the bank to obtain and record a written transfer of the vendor's lien note. He had signed the indemnity long before the bank had acquired the note; hence he was in no sense a subsequent indemnitor without notice of the lien. He indemnified against the lien. The failure of the bank to procure the written transfer is not shown to have placed him in a worse condition than he was before. He therefore could not plead estoppel against the bank as to the foreclosure of the vendor's lien.

[8] The note executed by McKinley and Thompson bears interest from maturity at 10 per cent. per annum, and provides for 10 per cent. additional on principal and interest as attorney's fees, if not paid when due, and is placed in the hands of an attorney for collection or collected by suit. The appellant in this case seeks to recover such interest and attorney's fees, and alleges the institution of the suit and the placing of the notes in the hands of his attorneys. There is no plea by appellees that the attorney's

fees are unreasonable or otherwise improper. We think the appellant is entitled to 10 per cent. on the amount due as attorney's fees. Cameron v. Barcus, 31 Tex. Civ. App. 46, 71 S. W. 423; Page v. White Sewing Machine Co., 12 Tex. Civ. App. 327, 34 S. W. 988. The object of the contract was to indemnify the appellant should appellees fail to extinguish the lien on the land, and, if the appellant had to resort to legal measures, to enforce his right. The agreement was to pay 10 per cent. on the note.

[9] We see no good reason why the contract of the parties in indemnity contracts should not be given effect as in any other contract, according to their intent. Stevens v. Wolf, 77 Tex. 215, 14 S. W. 29; Ackerman v. King, 29 Tex. 291; O'Connor v. Smith, 84 Tex. 232, 19 S. W. 168; Taylor v. Dunn, 80 Tex. 652, 16 S. W. 732. In cases like Branch v. Howard, 4 Tex. Civ. App. 271, 23 S. W. 478, where the amount was paid by the indemnitor for which the note of indemnity was held, when such amount was discharged, it extinguished the note. In that case the general principle was announced that the purpose of indemnity was to secure the parties so damnified against loss or liability by the default of the indemnitor. In this case the appellant took the note in suit to protect himself against the outstanding vendor's lien note maturing the same day as did the note so executed and for the same amount, with interest at 10 per cent. and 10 per cent. attorney's fees. It to our mind clearly evidences the fact it was the purpose of the parties, should appellant be required to pay off the lien, that he should have the sum paid by him for McKinley, with 10 per cent. attorney's fees. The parties by their agreement and contract evidenced the purpose that the notes should so operate. The note is as much a part of the indemnity contract as any other portion of it. In order to afford appellant relief, it is not necessary to give him a judgment on the note as such. Construing the note as part of the contract constituting the indemnity agreement, it clearly appears that, if McKinley should default and appellant be forced to legal measures, then he have 10 per cent. thereof to pay attorney's fees. Why not give this provision of the contract effect? On what principle shall the courts expunge this provision from the contract? It is clearly expressed, it is agreed, and so understood, and as such should be enforced. Our Supreme Court has held that the stipulation for 10 per cent. attorney's fees is in the nature of a contract of indemnity, and is treated by the parties as in the nature of costs, and such promise to pay attorney's fees is fixed as a contract of indemnity. So considered, it contains an obligation of the maker of the note to pay costs of collection and at the same time fixes the amount thereof at 10 per cent. of such obligation. In such case, in the absence of plea and proof that such provision is unreasonable and unconscionable, the court is authorized to act upon such fee as agreed upon by the parties, and enter judgment accordingly. First National Bank of Eagle Lake v. Robinson, 135 S. W. 372. In the case of Beckham v. Scott, 142 S. W. 80, the court there held that where a suit is instituted on a note for attorney's fees, where the note itself stipulated that 10 per cent. should be paid thereon if collected by law or sued on, that it is only necessary that suit should be brought thereon in order to entitle plaintiff to recover the amount so stipulated as attorney's fees when no effort is made to show such amount to be unreasonable. The court takes cognizance of the fact that the suit is brought, and that the contract is being collected by law. In this case it is alleged the notes were placed in the hands of an attorney and suit instituted thereon. There are no allegations by appellees that the sum is unreasonable. At the date of the judgment herein, according to the terms of the contract, there would have been due on the amount of the note, principal, and interest $945 and $94.50 attorney's fees. The amount which appellant had to pay in order to release his land from the vendor's lien was $896.10, the amount of the judgment and costs. We hold, therefore, when appellant paid off the judgment on the vendor's lien against his land, July 1, 1911, that under the indemnity contract appellees were due appellant thereon the sum of $888.55. As appellees were not liable for more than the amount of the contract of indemnity at that time, he could not hold them for a greater sum. We hold that appellant was entitled to judgment for said sum of $888.55, with interest thereon at the rate of 10 per cent. per annum from July 1, 1911, up to the date of the judgment herein in the district court, May 24, 1912, together with 10 per cent. on the principal and interest of said amount as attorney's fees, and the judgment so obtained to bear interest from that date at the rate of 10 per cent. per annum. The judgment will be for said sum so due on May 24, 1912, against the appellee H. B. McKinley, as principal on said obligation, and J. D. Thompson, as surety thereon.

The judgment of the lower court is reversed and rendered in accordance with this opinion as herein expressed for appellant against the appellees as above directed, and for all costs of this appeal as well as the costs in the court below; and it is so ordered.

### On Motion for Rehearing.

The appellees, upon motion for rehearing, take us severely to task because we examined their brief, when they "only" authorized us to do so in case we refused to strike out the appellant's assignments of error. We must plead guilty to having peeped under the "only" and looked into appellees' brief,

as well as to the appellant's assignments of error. We then thought from the record there was fundamental error, and yet think so; and hence did not strike out the assignments of error. Rules 23, 24, and 29 for Courts of Civil Appeals (142 S. W. xii, xiii) permit fundamental error to be assigned whether presented in the motion for new trial or not; and, when we found fundamental error, we saw no reason for striking out the assignments, but what we said was to again emphasize the rule which requires reference to be made to the grounds of the motion for new trial upon which it is based. Waiving the question as to whether there was error assigned which was not fundamental, we proceeded to consider the case on what we conceived to be the rights of the parties, as shown by the record.

[10] It is urged that appellant, Davidson, himself participated in the fraud, and placed himself in a position that precludes the recovery by him upon the indemnity contract, for. the reason that, while McKinley tried to get him to surrender the release, appellant, under the advice of attorneys, refused to do so. It is quite clear that Davidson could not claim under the release procured by the fraud of Hawkins and McKinley, and if he tried to do so, if there was nothing else, that alone would have prevented his setting up the release of such lien procured by the unlawful acts of McKinley and Hawkins. Neither can Thompson and McKinley in this case set up such unlawful acts on the part. of McKinley and Hawkins or Davidson as a defense to the lawful contract. Their acts as set up herein show, in fact, no release of the vendor's lien. Thompson cannot plead such acts if fraudulent, as a satisfaction of the vendor's lien, unless he also shows that thereby he was induced to change his condition for the worse, or that he was in some way injured thereby. This he does not do, but himself tries to defeat a lawful contract by the unlawful acts of McKinley. Lemmon v. Hanley, 28 Tex. 225; Bremond v. McLean, 45 Tex. 10; Read v. Chambers, 45 S. W. 742.

It is admitted practically in this case that Davidson had nothing to do with getting the release from Hawkins. After he had been induced to believe his land was released, then McKinley tried to get him to surrender the release. Why should Davidson do so? If the note held by the bank was a lien, its foreclosure was the necessary sequence. It was his right and certainly the only prudent course for him to pursue after having been placed in the position he was by. the wrongful acts of the parties to take the judgment of the court. The attorneys correctly advised him under the circumstances not to voluntarily surrender the release. If the lien still existed, the bank could foreclose, and he could pay off the judgment as well as the note. If the appellees' (McKinley and Thompson) consciences had become quickened. they could have paid off the note, and made effective the release. If appellant had voluntarily surrendered the release, appellee Thompson would be contending as the appellees are now doing, that the lien was released, and therefore he would not be liable under the contract for indemnity, with the added ground that Davidson had voluntarily canceled the release which had been procured for him. Appellant simply acted under the prudent advice of his attorneys to let a court of competent jurisdiction decide whether the bank had lost its lien under the circumstances by a failure to record a transfer of the lien. In fact, it was all he could do. He fought the case on the ground that the bank had been negligent in not procuring a transfer of the lien, and in not having placed it of record. It does not lie in the mouth of McKinley and Thompson to say he ought not to have done so and then on the very ground upon which he tried to protect them fight their own obligation to pay the note, and to extinguish the lien. The wrong he committed, if any, was in not making McKinley and Thompson parties to the cross-petition over against them in that suit, and to pray for a judgment on his indemnity contract. He could certainly have then recovered judgment against them in that court, and no good reason is shown why he should not in this action. The appellees claim because Thompson is a surety on the contract that he cannot be held liable because of the negligence of the bank. He bound himself to pay off the vendor's lien note if McKinley did not get the release and discharge the vendor's lien. This we have seen McKinley did not do. Now, Davidson was not negligent, and did all he could to have the lien discharged, even to the extent of invoking in the courts the bank's negligence as being a discharger of the lien. What more could Thompson ask at his hands? If Davidson had refused to act, and had refused to compel the bank to establish its right to the lien in the courts, there might be some plausibility in Thompson's contention that he was discharged. In other words, if Davidson had voluntarily delivered up and canceled the release as McKinley tried to get him to do, after he had delivered it to Davidson, then Thompson might, with some degree of justice, insist such act discharged him, but now, after Davidson had done what he could to protect Thompson, he is met by Thompson with the charge of fraud in trying to do what he now contends discharged the lien, and he is therefore released from his obligation. The law of innocent purchaser for value without notice cannot in any sense apply to the discharge of Thompson in this case, as the facts clearly show he was not such. The only question in so far as he is concerned is: Was the lien discharged? That it was not we think

has been clearly demonstrated in the opinion filed in this case. If the bank under the rules of law and equity still had its lien on the land as between the parties thereto, Thompson was bound by his contract of indemnity. He was not a party to the contract creating the lien, but only a party to the contract of indemnity. Only the acts of Davidson could affect his right, and, he having failed in our judgment to show that the parties to the lien contract and the lien on Davidson's land were released, then his obligation becomes clear to pay Davidson the sum which he, Davidson, had to pay to clear up his land. In Thompson's pleadings he alleges no failure and proves none, on the part of Davidson which released him from his obligation. He does allege a postponement of the payment of the vendor's lien note, but he does not allege that there was any valid agreement or an agreement of any sort to postpone its payment.

[11] A mere postponement or failure to sue does not discharge a surety without a valid agreement to do so. Article 3811, Sayles' Civil Statutes; National Bank of Commerce v. D. Gilvin, 152 S. W. 652, decided by this court, December 14, 1912, No. 300, and authorities therein cited. In this case Davidson was not the owner of the vendor's lien note, and had no control over it. There was no liability on the indemnity contract until Davidson had to pay off the vendor's lien note.

The fact that this is the second appeal, the change of the views of this court on this appeal from its former views, as expressed in the opinion handed down on the first appeal, and on account of the earnestness appellees have manifested, induced us to go into a more extended analysis of the case and the reasons upon which the opinion is based than we would have done otherwise, or than the importance of the questions involved and the case itself requires.

We therefore overrule the motion for rehearing.