## W. S. PAGE ET AL. v. WHITE SEWING MACHINE CO.

### No. 916.

**1. Bond—Oral Condition by Surety.**

Where a bond recites that "the person to whom this bond is entrusted has absolute authority to deliver it, and the same is made and shall be construed without reference to any other instrument or agreement whatsoever," a surety thereon cannot defend by showing that he signed it upon oral conditions to which his liability was subject.

**2. Same—Waiver of Notice by Surety.**

Where a bond given to secure the payment of all indebtedness that might become due from the principal therein to the obligee, whether evidenced by account, notes, or otherwise, expressly stipulated that the obligors waived "presentment for payment, notice of non-payment, protest and notice of protest, and diligence, upon all such notes, accounts," etc., the sureties thereby waive notice of default in the payment of notes given by the principal under the terms of the bond.

**3. Suretyship and Guaranty—Distinctions Between—Notice.**

A bond binding the principal and sureties for the payment of all claims and debts that may become due from such principal to the obligee, a sewing machine company, is, as affecting such sureties, a contract of suretyship, and not a continuing guaranty under which such sureties, as guarantors, would be entitled to notice of default in payment on the part of the principal. See the opinion in full for the distinctions between contracts of suretyship and guaranty in respect to such notice.

APPEAL from Johnson. Tried below before Hon. J. M. HALL.

*Poindexter & Padelford,* for appellants.—1. To constitute a valid execution of a contract, delivery, that it shall be the contract of the

obligor, is essential. When a contract is delivered upon condition, it does not become the contract of the obligor until this condition is performed. If a contract is signed upon condition and is delivered upon this condition, then it does not become a binding obligation until the condition upon which its delivery depends has been fulfilled. Loving v. Dixon, 56 Texas, 77; McFarland v. Sikes, 54 Conn., 250; Benton v. Martin, 52 N. Y., 570; Lynn Co. v. Ferris, 52 Mo., 75 (14 Am. Rep., 349); State v. Bostwick, 32 N. Y., 445; Chipman v. Tucker, 38 Wis., 43.

2. Where the guaranty is a continuing one, and the amount of liability thereunder may be increased or diminished from time to time, and the guaranty is uncertain as to when it will cease to be binding on the guarantor, and when the party indemnified has the power at pleasure to annul and put an end to the contract guaranteed, without the knowledge of the guarantor, he is entitled to notice within a reasonable time after the transactions guaranteed are closed, of the amount of his liability thereunder, and if such notice is not given, and if thereafter the principal becomes insolvent, the guarantor is thereby released. Singer Manufacturing Co. v. Littler, 56 Iowa, 602; Davis Sewing Machine Co. v. Mills, 55 Iowa, 543; Craft v. Isham, 13 Conn., 28; 1 White & W. C. C., sec. 169; Lee v. Dick, 10 Peters U. S., 482; Whitton v. Mears, 45 Am. Dec., 233 (11 Met., 563); 2 Parsons on Con., 30:

No brief for appellee reached the Reporter.

LIGHTFOOT, CHIEF JUSTICE.—The appellee sued appellants August 22, 1889, upon the following bond which was duly signed and executed by W. S. Page, G. G. Towles, W. P. Epperson and W. H. Niles: "Know all men by these presents that we, W. S. Page, and G. G. Towles and W. P. Epperson and W. H. Niles are held and firmly bound, severally and individually, unto the White Sewing Machine Company in the sum of one thousand dollars, lawful money of the United States of America, to be paid to the White Sewing Machine Company, their representatives or assigns, for which payment (together with ten per cent thereon in case of suit upon this bond) well and truly to be made, they bind themselves, their heirs, executors, administrators and separate estate, jointly and severally, firmly by these presents. Sealed with their seals, dated March 12, 1886. The conditions of the above obligation are such, that if the above bound W. S. Page, his heirs, executors or administrators, shall well and truly pay or cause to be paid any and every indebtedness or liability now existing or which may hereafter in any manner exist or be incurred on the part of the said W. S. Page to the White Sewing Machine Co., or its assigns, whether such indebtedness or liability shall exist in the shape of book accounts, notes or leases, renewals or extensions of notes, accounts, leases, acceptances, indorsements, consignments of property or merchandise, failure to deliver or account for same or any part thereof, or otherwise, and whether same shall be waived under any contract between said White Sewing

Machine Company and said W. S. Page, or otherwise, and whether same shall arise out of the purchase and sale of sewing machines, or otherwise, hereby waiving presentment for payment, notice of non-payment, protest and notice of protest and diligence upon all notes, accounts or leases now or hereafter executed, indorsed, transferred, guaranteed or assigned by the said W. S. Page to the White Sewing Machine Company, its agents or assigns, then this obligation shall be null and void, but otherwise to be and remain in full force and effect. Each one signing this bond is bound according to the purport of it, without regard to any understanding that any person should also sign this instrument, and the person to whom this is intrusted has absolute authority to deliver it, and the same is made and shall be construed without reference to any other instrument or agreement whatsoever. It is further understood and the undersigned hereby agree and consent that the White Sewing Machine Company or its agents may in their discretion take and receive from said W. S. Page any security whatsoever, mortgage, personal or other property at any time or times, and grant any extension to said W. S. Page without in any way affecting the liability of the signers hereto or either of them from the obligations of this bond."

The above bond was made an exhibit to the petition. W. P. Epperson and W. H. Niles being non-residents and insolvent, were not sued. The petition alleged a breach of the bond, in that W. S. Page, the principal in the bond, became indebted to plaintiff by the purchase of sewing machines under his contract, and that judgment had been obtained against him for $4449.24 therefor, which he had failed and refused to pay. Plaintiff set out various claims, and prayed for judgment on the bond, and for ten per cent attorney's fees, and for general relief.

December 2, 1893, the appellants W. S. Page and G. G. Towles filed their second amended answer, consisting of a general denial, a plea of res adjudicata by W. S. Page, a plea in the nature of non est factum by G. G. Towles, that said contract was signed by him upon a condition which was never fulfilled; that no notice of the acceptance of same was ever given him by plaintiffs, etc.; that defendant G. G. Towles is released by reason of plaintiff having failed to notify him of the default of defendant Page, and that the contract was changed and additional credit given said Page in 1888, whereby the defendant G. G. Towles was released, etc.

December 2, 1893, plaintiff filed its first supplemental petition in reply to defendant's said answer, alleging that by reason of the terms of the contract sued upon defendant Towles was estopped from setting up said defenses contained in his second amended answer. On December 3, 1893, the case was tried by a jury, and in accordance with the instructions of the court the jury returned a verdict in favor of plaintiff and against defendants for $1000, with interest at the rate of six per cent per annum from August 22, 1889, until the trial, and ten per cent as attorney's fees, upon which judgment was rendered, and defendants appeal.

The above bond of appellant W. S. Page was introduced in evidence, and it was fully shown that he was indebted to appellee as alleged in its petition. Appellants have ably presented the case from their standpoint, but appellee has filed no brief or appeared in this court, and we have had no aid whatever from that side in the investigation of the important questions considered.

Under appellants' fifth, sixth and seventh assignments of error they complain of the ruling of the court in excluding the testimony of appellant G. G. Towles, by which he attempted to show that appellee had no cause of action against him, because, when he signed the bond, he did so on condition that the contract of W. S. Page should be extended to other counties, and additional credit given him, and that he (Towles) should be notified of the fact, and that the bond never became a binding obligation upon him. The bond, which was signed by the witness Towles as a surety, provides on its face that "each one signing this bond is bound according to the purport of it, without regard to any understanding that any person should also sign this instrument, and the person to whom this is intrusted has absolute authority to deliver it, and the same is made and shall be construed without reference to any other instrument or agreement whatsoever." The instrument was delivered, the territory of W. S. Page was extended and his line of credit enlarged. Under such facts, did the court err in excluding the oral testimony of G. G. Towles by which he sought to evade the terms of the written contract by a parol understanding? We think not.

It is further contended by appellants that the court erred in excluding the testimony offered by appellant Towles tending to show that if he had known of the default of his principal, he could have saved himself harmless by getting additional security, but the company gave him no notice.

Appellants insist upon treating the contract as one of strict legal guaranty. We can not so regard it. It is a plain bond, executed by W. S. Page to the appellee, with G. G. Towles and others as securities. The contract is between the appellee on the one side, and W. S. Page, as principal, and Towles and others as sureties, on the other. The difference between a contract of guaranty and one of suretyship is not always clearly marked or well defined. In Anderson's Law Dictionary, page 497, the difference is thus stated: "A contract of 'suretyship' is a direct liability to the creditor for the act to be performed by the debtor; whereas, a 'guaranty' is a liability only for his ability to perform this act. A 'surety' assumes to perform the contract for the principal debtor if he should not; a 'guarantor' undertakes that his principal can perform, that he is able to perform. The undertaking of a 'surety' is immediate and direct, that the act shall be done, and, if not done, then he is to be responsible at once; but from the nature of the undertaking of a 'guarantor,' non-ability (insolvency) must be shown."

"A 'guarantor' insures the solvency of the debtor; a 'surety' insures the debt itself. A surety must demand proceedings, with notice that

he will not continue bound unless they are instituted; whereas, a guarantor may rely upon the obligation of the creditor to use due diligence to secure satisfaction of his claim." Reigart v. White, 52 Pa. St., 438;. Kramph v. Hatz, 52 Pa. St., 525.

Mr. Brandt, in his work on Suretyship and Guaranty, section 1, thus. states the difference: "What is a surety or guarantor—Difference between them.—A surety or guarantor, is one who becomes responsible· for the debt, default or miscarriage of another person. The words. surety and guarantor are often used indiscriminately as synonymous. terms; but while a surety and a guarantor have this in common, that they are both bound for another person, yet there are points of difference between them which should be carefully noted. A surety is usually bound with his principal by the same instrument, executed at the same· time and on the same consideration. He is an original promisor and debtor from the beginning, and is held ordinarily to know every default of his principal. Usually he will not be protected, either by the mere· indulgence of the creditor to the principal, or by want of notice of the default of the principal, no matter how much he may be injured thereby. On the other hand, the contract of the guarantor is his own separate· undertaking, in which the principal does not join. * * * The principal and surety being directly and equally bound, may be sued jointly in the same suit, while the guarantor being bound by a separate contract and only collaterally liable, can not usually be joined in the same suit. with the principal." See also, section 100.

This definition was adopted, in substance, by the Court of Appeals. from Burge on Sureties, as follows: "Surety; Guarantor; Difference· Between—A surety is usually bound with his principal in one and the same instrument, executed at the same time and on the same consideration. On the other hand, the contract of the guarantor is his own separate undertaking, in which the principal does not join. Burge on Sureties, section 1. A surety is in the first instance answerable for the· debt for which he makes himself responsible, while the guarantor is. only liable when default is made by the party whose undertaking is. guaranteed. A guarantor is entitled to notice. Burge on Sureties, section 157. A surety is liable upon the delivery of the obligation." Garrett v. Insurance Co., 1 White & W. C. C., sec. 937.

This distinction has been recognized and acted upon by our Supreme· Court wherever the question has arisen, though we find no direct adjudication upon it. This is a plain bond executed by a principal, with sureties, whereby the obligors bind themselves for the performance of certain things by the principal in the bond. It is not a technical contract of guaranty, under which the sureties may claim a release because they are not notified of the default of the principal. Singer Manufacturing Co. v. Ponder, 82 Texas, 653; Screwmen v. Smith, 70 Texas,. 168; Bennett v. Association, 57 Texas, 72; Lemp v. Armengol, 86 Texas, 690; Hueske v. Brousard, 55 Texas, 201; Clark v. Cummins, 84 Texas, 610; Palmer v. Bagg, 56 N. Y., 523.

Under a technical contract of guaranty, where the guarantor alone makes a contract with the guarantee, that he will stand bound for the acts of a third person, the contract is between the guarantor and the guarantee, and the rules as to notice will usually apply. Wilkins v. Carter, 84 Texas, 438; Johnson v. Bailey, 79 Texas, 516; Davis v. Wells, 104 U. S., 159; 115 U. S., 524. But we have here no such contract of guaranty, and the rules invoked by appellant do not apply.

Appellants, in their able presentation of the case, rely upon the cases of Davis v. Mills, 55 Iowa, 543, and Singer Manufacturing Co. v. Littler, 56 Iowa, 601. In the former, there was a clear contract of guaranty. In the latter, the terms of the contract are vaguely set out, but from the portions given, it seems to be a very different contract from the one before us. The court there lays much stress on a provision in the contract that the party indemnified had the power, at pleasure, to annul and put an end to the contract, and the company did terminate it, taking the note of the agent on settlement. In this case no such provision occurs in the contract; but, on the contrary, the contract provides as follows: "It is further understood and the undersigned hereby agree and consent that the White Sewing Machine Company, or its agents, may in their discretion take and receive from said W. S. Page any security whatsoever, mortgage, personal or other property, at any time or times, and grant any extension to said W. S. Page without in any way affecting the liability of the signers hereto or either of them from the obligations of this bond." Thus the parties bound themselves in the most solemn manner that the sureties should not be released by reason of any extension of time, or the taking of any security or property whatsoever from W. S. Page. Under our statutes, appellant, whose duty it was under the contract to keep himself posted in regard to his principal, could have relieved himself by serving notice on the party indemnified at any time after a cause of action accrued. Sayles' Civ. Stat., article 3660. "Any person bound as surety upon any contract for the payment of money or the performance of any act, when the right of action has accrued, may require, by notice in writing, the creditor or obligee forthwith to institute suit upon such contract." No such notice was given by appellant Towles, but he here claims that notice should have been given to him by the obligee in the bond.

We fully realize the difficulty in determining the exact difference between contracts of strict guaranty and suretyship, and of harmonizing the conflicting decisions upon the subject. It has been held with much forcible reasoning in some of the States, that in every case where the bond signed by the surety is collateral to the main contract, even though such bond is also signed by the principal in the main contract, it is nevertheless a contract of guaranty, that the surety is only bound collaterally, and is entitled to notice of the default of the principal, so that he may protect himself. LaRose v. Logansport National Bank, 102 Ind., 332, and authorities there cited; Kearnes v. Montgomery, 4 W. Va., 29; Singer Manufacturing Co. v. Forsyth, 108 Ind.; 334.

On the other hand, in a case similar to the one before us, involving a bond given to a sewing machine company, not so strong in its terms as this, it was held by the Supreme Court of Alabama, supported by quite an array of authorities, that while a case might arise involving only the secondary liability of the sponsors, though the undertaking be signed also by the principal, "that in most cases the joint execution of a contract by the principal and another operates to exclude the idea of a guaranty, and that in all cases such fact is an index pointing to surety-ship." Saint v. Wheeler & Wilson Manufacturing Co., 95 Ala., 362 (36 Am. St. Rep., 212), and authorities there cited; Campbell v. Sherman, 151 Pa. St., 70 (31 Am. St. Rep., 735); Reigart v. White, 52 Pa. St., 440.

After all, the contract in each case must be construed and its true intent and purpose drawn from the terms in which the parties themselves have expressed it. In the case of Davis v. Wells, 104 U. S., 169, the Supreme Court of the United States held that even though the contract was one of continuing guaranty, and so shown upon its face, yet the guarantor, by agreeing to guarantee "unconditionally and at all times" the indebtedness, waived notice of the default.

It has been held in Illinois that in case of an absolute guaranty, the guarantor is not entitled to notice of non-performance. Taussig v. Reid, 145 Ill., 488, citing 2 Story on Contracts, section 1133; Baylies on Sur. and Guar., 202. See also, McMillan v. Bank, 32 Ind., 11; Beebe v. Dudley, 26 N. H., 249 (59 Am. Dec., 341).

Whether the contract in this case should be construed as a continuing guaranty or suretyship, in either event, the only object of notice of default on the part of the principal would be that the surety might protect himself against loss. The contract itself provides the conditions of the bond, as follows: "The conditions of the above obligation are such, that if the above bound W. S. Page, his heirs, executors or administrators, shall well and truly pay or cause to be paid any and every indebtedness or liability now existing or which may hereafter in any manner exist or be incurred on the part of said W. S. Page to the White Sewing Machine Company, or its assigns, whether such indebtedness or liability shall exist in the shape of book accounts, notes or leases, renewals or extensions of notes, accounts, leases, acceptances, endorsements, consignments of property or merchandise, failure to deliver or account for same or any part thereof, or otherwise, and whether the same shall be waived under any contract between said White Sewing Machine Company and said W. S. Page, or otherwise, and whether the same shall arise out of the purchase and sale of sewing machines, or otherwise, hereby waiving presentment for payment, notice of non-payment, protest and notice of protest and diligence upon all notes, accounts or leases now or hereafter executed, endorsed, transferred, guaranteed or assigned by the said W. S. Page to the White Sewing Machine Company, its agents or assigns," etc.

The liability upon which this suit was brought originated in the

sale of certain sewing machines by the company to Page, for which he had executed his promissory notes. Were the appellants entitled to notice of non-payment of these notes? The contract itself expressly waives notice of non-payment of the notes, as well as diligence on the part of the company in collecting them, which waiver applies to all notes executed by Page, as well as those endorsed, transferred, guaranteed or assigned by him. The court did not err in excluding the testimony of Towles as complained of under these assignments.

The other assignments are not considered as material.

The judgment of the court below fully protects appellant Page, by providing that any sum which may be realized from this judgment shall also be credited on the other judgment in favor of appellee against him, and that any sum realized on that judgment shall be credited on this.

We find no error in the judgment, and it is affirmed.

Delivered January 11, 1896.

*Affirmed.*