**ARNETT et al. v. SIMPSON et al.   (No. 1857.)**

(Court of Civil Appeals of Texas.   Amarillo. Nov. 30, 1921.   Rehearing Denied Jan. 4, 1922.)

**1. Principal and surety ⬳123(1)—Notice by protest or suit unnecessary to fix liability of surety.**

The liability of lessee's sureties on the contract guaranteeing performance by the lessee, written on the back of the lease, is not that of indorsers, since the instrument was not assignable or negotiable by law, and Rev. St. art. 579, does not require notice by protest or suit to fix the liability of such surety.

**2. Principal and surety ⬳125—Diligence to fix liability of assignor not necessary for surety or guarantor.**

The diligence to collect the obligation from the assignee required by Rev. St. arts. 583, 584, to fix the liability of the assignor of a nonnegotiable instrument is not required to fix the liability of the sureties or guarantors of a lessee.

**3. Principal and surety ⬳126(1) — Surety must give notice to sue debtor.**

Sureties, who guaranteed the performance of the lease by the lessee, are governed by Rev. St. art. 6329, authorizing sureties to require, by notice in writing, the creditor or obligee forthwith to institute suit on the contract, and cannot claim discharge by the lessor's failure to sue the lessee, unless they gave notice to begin such suit.

**4. Principal and surety ⬳125—Creditor owes no duty to collect from debtor.**

As a general rule the creditor owes to the surety no duty of active vigilance to collect the indebtedness from the debtor, and the surety continues liable, though the creditor sleeps.

**5. Principal and surety ⬳163—Dismissal as to insolvent principal does not discharge surety.**

Where the lessee is insolvent, the suit against the lessee and his sureties may be dismissed as to the lessee, and judgment recovered from the sureties, under Rev. St. arts. 1842, 1843, 6336, 6337.

**6. Principal and surety ⬳163—Findings held to show principal was insolvent.**

In an action against the lessee and his sureties, which was dismissed as to the lessee, special findings that the lessee was notoriously insolvent when the suit was filed and at the time of trial authorized judgment against the sureties notwithstanding the discontinuance, though the jury also found plaintiff could have collected a part of its claim from the lessee by exercising diligence.

**7. Principal and surety ⬳6—Contract of surety and guarantor distinguished.**

A surety is usually bound with his principal by the same instrument, executed at the same time and on the same consideration, and insures the performance of the contract of his principal, while a guarantor merely insures the

---

solvency, or ability to perform, of his principal.

**8. Principal and surety ☞6—Obligation of defendants held that of surety, not guarantor.**

An obligation, written on the lease and signed by defendants, reciting that the lease was made at defendants' request, and that defendants, in consideration of the letting, guaranteed the performance by the lessee, and in the event of default assumed his obligation, was an undertaking of suretyship, not a technical guaranty.

**9. Principal and surety ☞99—Surety held discharged by change in original contract.**

The sureties of a lease for a building are discharged by a new agreement between the lessor and lessee, whereby the lessor was given the use of one-half of the building for storage purposes, even though that change in the contract did not prejudice the sureties.

**10. Principal and surety ☞77 — Change of lease held to discharge surety's obligation on defendants' covenant to pay money.**

Where, in accordance with one of the clauses of the lease, the lessor advanced money to the lessee which the latter was to repay in installments, and the failure to pay any installment terminated the lease, the agreement to repay the money was a dependent provision of the lease, so that the discharge of the lessee's sureties by a change in the terms of the lease discharged also their liability to secure repayment of the installments not due when the change was agreed on.

Appeal from District Court, Lubbock County; W. R. Spencer, Judge.

Action by Mary E. Simpson and another against R. H. Arnett and others. Judgment for plaintiffs, and defendants Arnett appeal. Reversed and remanded.

Bean & Klett, of Lubbock, for appellants. Percy Spencer, of Lubbock, for appellees.

HUFF, C. J. This action was brought by appellee Mary E. Simpson as executrix of the will of her deceased husband, C. P. Simpson, joined by J. W. Bounds, against Geo. W. Goss and appellants, R. H. and W. D. Arnett. The action is based on a lease contract to a certain building in the town of Lubbock, dated April 23, 1918, between C. P. Simpson and J. W. Bounds, lessors, on the one part, and Geo. W. Goss, lessee, on the other part, for a period of two years, to be occupied as a garage and paint shop, for an annual rental of $500, payable monthly in advance on the 1st day of each month. Clause 7 of the contract reads:

"That in case of default in any of the above covenants and agreements the lessors may enforce the performance thereof in any of the modes provided by law, and may declare the lease forfeited at their discretion, and they or their agents shall have the right without further notice or demand to re-enter and remove all persons therefrom, without being deemed guilty of any manner of trespass, and without prejudice to any remedies for the unpaid rent or breach of contract, or they may assume possession of the premises and relet the same for the remainder of the term at the best rent they may obtain for account of lessee, who shall make good any deficiency, and the lessors shall have liens as security for the rent aforesaid, upon all goods, wares, tools, chattels, implements, fixtures, and machinery, and other personal property which may be put in said building for lessee."

Clause 8 reads:

"That said lessors have this day loaned the lessee the sum of $800, which is to be paid back to said lessors, with 10 per cent. per annum interest thereon, in monthly installments of $18.-33⅓ payable on the 1st day of each month, except the last payment, which is to be paid on the 1st day of the last month of this lease, and is to be for the full amount of the balance due and interest on the whole amount, and the failure to pay any installment when due, shall, at the option of the lessors, mature the whole and terminate this lease, and the payment of said $800 and interest as the same matures is made one of the covenants of this lease."

After the signatures of the lessors and the lessee, the following guaranty is indorsed on the instrument:

"The above-described lease having been made at our request, in consideration of said letting, we hereby guarantee the performance of all the covenants and conditions of said lease and contract by the lessee, and agree to assume the obligations of the lessee in the event of default." Signed by the appellants Arnett.

It is alleged that on the 1st day of February, 1919, defendants vacated the building, since which time plaintiffs have used and occupied the same, as a storage room, the reasonable value thereof being $15 per month, for which defendants are entitled to a credit for the value of such use; that Geo. W. Goss is insolvent; that plaintiffs have been damaged in the sum of $2,300, less the amount of the credit above pleaded, and they pray for a judgment accordingly.

The defendants R. H. and W. D. Arnett replied that the plaintiffs had not shown statutory diligence in securing and fixing liability of defendants Arnett; that suit had not been filed at the first term of court after the cause of action accrued; that there had been no protest or notice of protest by a notary public and no excuse alleged; that said defendants had no notice of default and had not waived diligence. They also alleged that on about September 1, 1918, they were released and discharged from liability on said rental contract and loan agreement, in that the landlords and lessee mutually agreed to rescind and alter said contract— an agreement in such way as to allow the plaintiff the use of said building as a storage room without the knowledge or consent of the sureties, although the rental contract

guaranteed by the appellants restricted the use of said building to that of a garage and paint shop, and none other, thereby releasing appellants from all liability.

The case was submitted to the jury on special issues, which with the findings of the jury are as follows:

"(1) Was Geo. W. Goss notoriously insolvent at the time this 'suit was originally filed? Answer: Yes.

"(2) Is Geo. W. Goss notoriously insolvent at this time? Answer: Yes.

"(3) Does Geo. W. Goss reside in such part of the state of Texas that he ·cannot be reached by ordinary process of law? Answer: Yes.

"(4) What part of their debt could plaintiff have collected out of the property belonging to Geo. W. Goss by the exercise of ordinary diligence, under the circumstances? Answer: $400.

"(5) Did the defendant Geo. W. Goss have property in his possession out of which the plaintiff could have collected any part of their debt by execution or sale? Answer: Yes.

"(6) Could plaintiffs have collected by execution or order of sale any part of their debt out of property on which they had a lien? Answer: Yes.

"(7) Did defendant Geo. W. Goss 'have property in his possession after plaintiff's cause of action accrued out of which they could have collected their rent by the exercise of ordinary diligence? Answer: No.

"(8) Was the defendant Geo. W. Goss insolvent on May 8, 1919? Answer: Yes.

"(9) Did the plaintiff protest or give·notice of protest of nonpayment of any part of the debt sued on? Answer: Yes.

"(10) Is defendant Geo. W. Goss now insolvent? Answer: Yes.

"(11) Did the plaintiff and defendant Geo. W. Goss mutually agree, on or about February 1, 1919, to a rescission of the rental contract sued on, for the purpose of allowing plaintiff to use 'one-half of the 30-foot frame building described in lease contract sued on, without the knowledge or consent of defendants R. H. and W. R. Arnett? Answer: Yes.

"(12) Did plaintiff give notice to or make demand upon defendants R. H. and W. R. Arnett at or before taking possession ‚of the rented building in controversy on or about February 1, 1919? Answer: No."

Upon calling the case for trial, and upon announcement, the plaintiff dismissed as to Geo. W. Goss, and judgment was entered that he go hence and recover his costs, and upon the findings of the jury the court entered judgment in favor of the appellees against appellants Arnett jointly and severally for the sum of $1,613.49, with interest on $999.72 of that amount at the rate of 10 per cent. per annum from' the date of the judgment, and on $613.17 at the rate of 6 per cent. per annum from the date of the judgment. From this judgment the Arnetts appeal.

[1] It is asserted by propositions that appellants are only indorsers on the obligation of the tenant and liable only in the event of default; that appellees were not entitled to judgment for the reason that there is no

pleading and proof that the liability of appellants as indorsers was fixed according to statutes. The contract guaranteed was not a bill of exchange or promissory note, assignable or negotiable by law. Article 579, R. C. S., does not require notice by protest or suit on instruments of the character set out in the pleadings in order to fix the liability of. a surety or guarantor. The instrument was not negotiable and there was no necessity for protest to fix the guarantor's liability.

[2] Under articles 583 and 584 nonnegotiable instruments may be assigned, but in order to hold the assignor as surety for the payment of the obligation assigned the assignee shall use due diligence to collect the same. It has been held the diligence required under these statutes is the same as required in negotiable instruments under the law merchant. Kampmann v. Williams, 70 Tex. 568, 8 S. W. 310. The appellants in this case were not assignors of the lease, but agreed the lessee should perform his contract, and to assume the obligation in the event of default. The guarantor or surety, as distinguished from an indorser, is not entitled to demand protest notice, nor to require that suit should be brought against the maker to the first term of the court after the maturity of the obligation. Carr v Rowland, 14 Tex. 275; Brooks v. Stevens, 178 S. W. 31; Hollimon v. Karger, 30 Tex. Civ. App. 558, 71 S. W. 299; Toole v. First National Bank, 168 S. W. 423.

[3] The relation of the parties, as established by the instrument sued on, is, we think, controlled by article 6329, R. S., reading:

"Any person bound as surety upon any contract for the payment of money or the performance of any act, when the right of action has accrued, may require, by notice in writing, the creditor or obligee forthwith to institute suit upon such contract."

There is no pretense that such notice was given and the sureties, therefore, show no discharge or right of discharge under their obligation, or guaranty, for failure to sue or give notice. Naylor v. Anderson, 178 S. W. 620.

[4] The general rule is the creditor owes no duty of active vigilance to the surety to enforce the collection of indebtedness. 21 R. C. L. "Principal and Surety," § 162, p. 1124; Hunter v. Clark, 28 Tex. 159; Nunn v. Smith, 194 S. W. 406; Bank v. Gilvin, 152 S. W. at page 656 (8–11); Self Motor Co. v. Bank, 226 S. W. 428. The·cases cited by appellants, Heidenheimer v. Blumenkron, 56 · Tex. 308, and Barringer v. Wilson, 97 Tex. 583, 80 S. W. 994, hold parol testimony is not admissible to change the legal effect of an indorsement on a note. In those cases the payee indorsed the notes, and following his indorsement is that of others. It is not permissible to show such indorsers were mere

sureties, not entitled to notice under the law merchant; the court holding the legal effect of the indorsement could not be contradicted by parol testimony, and that notice must be shown under the statute or law merchant. This is made certain in the Heidenheimer Case, supra, where it is said:

"Reference is made to, cases in this court, where one not the payee of a note, putting his name on the back of it at the time of its inception, without any words to express the nature of his undertaking, has been held liable as original promissor or surety, or as indorser, according to the evidence as to the real obligation intended to be assumed at the time of signing."

And again:

"Here the indorsement of Hirsch was as regular, and the contract indicated thereby as definite, as if the note had been payable to him and then indorsed by him."

The surety or guaranty contract indorsed on the lease contract clearly brings it within that class of cases not requiring the suit or notice under the law merchant or of the statutes to fix liability. The contracts of surety and indorser have points of distinction between them that are important to observe. An indorser will be discharged without due demand and notice or a suit in time under our statute. A surety continues liable, though the creditor sleeps. 1 Brandt on Suretyship, § 3.

[5] The appellants on the lease contract stand as sureties, or are conditionally liable thereon, and if their principal was insolvent when the suit was instituted, and when the judgment was rendered, the principal could be dismissed from the suit or judgment, and judgment against the sureties or guarantors taken. R. C. S. arts. 1842, 1843, 6336, 6337.

[6] In this case Goss was alleged to be insolvent. The jury found that he was notoriously insolvent when the suit was filed and at the time of the trial. We think this meets the conditions which authorize the appellees to discontinue the suit against Goss. We do not think the finding of the jury that plaintiff could have collected $400 out of Goss, by exercising diligence, and that Goss did have property in his possession, out of which part of the debt could be made in the exercise of diligence, conflict with the finding on insolvency. The jury do find after the debt accrued Goss did not have property out of which it could have been collected by ordinary diligence.

[7] It follows, if the obligation of appellants, indorsed on the lease contract, is one of suretyship, as distinguished from one of guaranty, then the finding of the jury on the question of diligence in the collection of the rents or the money advanced will not affect the rights of the parties. The words "surety" and "guarantor" are often used indiscriminately as synonymous terms.

"A surety is usually bound with his principal by the same instrument, executed at the same time and on the same consideration. He is the original promisor and debtor from the beginning, and is held ordinarily to know every default of his principal."

"A contract of suretyship is a direct liability to the creditor for the act to be performed by the debtor; whereas a guaranty is a liability only for the ability to perform this act. A surety assumes to perform the contract for the principal debtor if he should not; a guarantor undertakes that his principal can perform. The undertaking of a surety is immediate and direct—that the acts shall be done, and, if not done, then he is responsible at once. But from the nature of the undertaking of a guarantor nonability (insolvency) must be shown. A guarantor insures the solvency of the debtor. A surety insures the debt itself. A surety must demand proceedings, with notice he will not continue bound unless they are instituted; whereas a guarantor may rely upon the obligation of the creditor to use due diligence to secure satisfaction of his claim." Page v. White Sewing Machine Co., 12 Tex. Civ. App. 327, 34 S. W. 988, quoting Reigart v. White, 52 Pa. 438; Kramph v. Hatz, 52 Pa. 525.

"Or yet another and more concise statement, a surety is one who undertakes to pay if the debtors do not; a guarantor, if the debtor cannot. The first is sponsor absolutely and directly for the principal's acts; the latter only for the principal's ability to do the act. The one is insurer of the debt; the other an insurer of the solvency of the debtor." Saint v. Wheeler, etc., 95 Ala. 362, 10 South. 539, 36 Am. St. Rep. 210; 1 Brandt, Suretyship & Guaranty, §§ 1–3.

[8] The obligation upon which appellants are sued recites the lease and money advanced were made at the request of appellants, and in consideration of the letting guaranteed the performance of all the covenants and conditions of the lease and contract by the lessee, and in the event of default assumed the obligation of the lessee. It was made at the same time the lease contract was executed and indorsed upon the same instrument. It was upon the same consideration as the lease. They guaranteed the lessee would perform the covenants and conditions; not that he was able, but he should do so. If he defaulted, they assumed his obligations. This clearly brings the undertaking within the definition of suretyship. It is not a technical contract of guaranty, under which sureties may claim a release, because they are not notified of default of the principal. 1 Brandt on Suretyship, § 110; Shropshire v. Smith, 37 S. W. 174; Slaughter v. Morton, 185 S. W. 905; Tobin Canning Co. v. Fraser, 81 Tex. 407, 17 S. W. 25; Tilt-Kenney Shore Co. v. Haggarty, 43 Tex. Civ. App. 335, 114 S. W. 386; Smith v. Cummer Mfg. Co., 223 S. W. 338; Young v. Bank of Miami, 161 S. W. 439, reversed in Bank v. Young (Com. App.) 208 S. W. 656, but evidently not on the point cited; 12 R. C. L. "Guaranty," § 13, p. 1064.

Some of the cases above cited are contracts, the terms of which are no. stronger than those on which suits were maintained without joining the principal debtor thereon. As we view this case, it is immaterial whether this is such a contract as will permit a suit on the guaranty obligation without joining the principal, as this was a surety contract, and the principal was insolvent when the suit was brought and when he was dismissed. Judgment could be rendered against the sureties, whether or not one was taken against the principal.

[9] We believe the fifth assignment and seventh proposition should be sustained. Under the tenth and eleventh findings of fact the jury found that appellees, the landlords, agreed with the tenant, Goss, on February 1, 1919, to a rescission of the rental contract sued on, for the purpose of allowing appellees to use one-half of the 30-foot building, and without the consent or knowledge of appellants, and that no notice was given appellants before taking possession of the building on that date. These facts were specifically pleaded by appellants as releasing them on their surety contract.

It is urged by appellees that the lease contract. in paragraph 7, above set out, stipulated that upon default they could re-enter and take possession of the property without impairing their remedies for rent or breach of contract. The provision gave appellee the right of re-entry upon default. Appellants only secured appellee against default. They did not agree to assume the obligation of a new contract, made upon the rescission of the one they guaranteed. They did not guarantee to pay upon entry by agreement to take over one-half of the building for a purpose for which it was not originally rented. This clearly changed the conditions and obligations which they agreed to assume in case of default. The entry by agreement and upon rescission was not an entry upon default.

"Whether this change in the contract resulted in injury to them or not, it resulted in materially changing the terms of the contract on which they were bound as sureties. That which remained after the change constituted a new contract. Upon this new contract they were not obligated, and cannot be bound. The old contract was annulled by the change; to the new contract they had not assented, and by it they were not bound." Bullard v. Norton, 107 Tex. 571, 182 S. W. 668(2); Amarillo Coal Co. v. Knight, 150 S. W. 318; Smith v. Montgomery, 3 Tex. 199; Friedman v. Davidson, 189 S. W. 1029; Warren v. Lyons, 152 Mass. 310, 25 N. E. 721, 9 L. R. A. 353; Stern v.

Sawyer, 78 Vt. 5, 61 Atl. 36, 112 Am. St. Rep. 890, 16 Ann. Cas. 356; Hotel Milton v. Powell, 146 Mo. App. 208, 123 S. W. 953.

[10] Clause 8 was mutually dependent upon the other covenants of the lease contract. The failure to pay any installment due on the loan of $800 as it matured terminated the lease, and "is made one of the covenants of the lease." The appellants guaranteed the performance of "all the covenants and conditions of said lease and contract by the lessee." By the provisions of the guaranty contract the covenants of the contract of lease were entire, and mutually dependent in so far as appellant's suretyship was concerned. It is, we think, clear appellants are only liable for the payments due up to the rescision of the contract or change by agreement. It is evident the trial court rendered judgment for installments after the change for the remainder of the term, less the $15 per month. This, under the verdict, we think was error. There is no statement of facts in this record showing whether the tenant paid any rent or not, or any installment on the loan.

We will therefore reverse and remand the cause for a new trial.